No. 22-6019

# IN THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

———————————————

TOBY HARMON; SHANE DODSON; TAMMIE DODSON,

*Plaintiffs-Appellants,*

v.

CITY OF NORMAN, OKLAHOMA; JEFF ROBERTSON,

*Defendants-Appellees.*

———————————————

**On Appeal from the United States District Court for the Western District of Oklahoma, Chief U.S. District Judge Joe Heaton
Case No. 18-CV-00688-HE**

———————————————

## <u>REPLY BRIEF OF APPELLANTS TOBY HARMON, SHANE DODSON, AND TAMMI DODSON</u>

Brently C. Olsson
CHEEK LAW FIRM, PLLC
311 North Harvey Avenue, Suite 200
Oklahoma City, Oklahoma 73102
Telephone: (405) 272-0621
Email: bolsson@cheeklaw.com
Counsel for Appellants

<u>David J. Markese</u>
David J. Markese
Frederick H. Nelson
**American Liberties Institute**
P.O. Box 547503
Orlando, FL 32854
Telephone: (407) 786-7007
Email: dmarkese@ali-usa.org
Counsel for Appellants

July 12, 2022

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................2

TABLE OF AUTHORITIES .................................................................4

I.    THE CITY AND ROBERTSON ARE NOT ENTITLED TO SUMMARY JUDGMENT ON HARMON'S AND THE DODSONS' AS-APPLIED FREE SPEECH CLAIMS ..........................................................................7

A.    It is not Undisputed that Law Enforcement Focused Only on Loud Noises...7

B.    As Applied, § 15-503(3) Does not Serve a Significant Government Interest ..................................................................................................12

C.    As Applied, § 15-503(3) is not Narrowly Tailored .....................................13

D.    As Applied, § 15-503(3) Does not Leave Open Ample Alternative Channels of Communication ..........................................................................15

II.    THE CITY AND ROBERTSON ARE NOT ENTITLED TO SUMMARY JUDGMENT ON HARMON'S AND THE DODSONS' AS-APPLIED FREE EXERCISE CLAIMS ...........................................................................16

III.    THE CITY AND ROBERTSON ARE NOT ENTITLED TO SUMMARY JUDGMENT ON HARMON'S AND THE DODSONS' FAILURE TO TRAIN CLAIM ..................................................................................16

IV.    HARMON AND THE DODSONS HAVE STANDING TO CHALLENGE THE CODE ON ITS FACE ..................................................................17

V.    ROBERTSON IS NOT ENTITLED TO QUALIFIED IMMUNITY ..........23

A.    Roberston was Acting Under Color of Law at the Abortion Clinic .............23

B.    The District Court Erred in Finding no Constitutional Violation.................29

C.    The Law is Clearly Established that Harmon's and the Dodsons' Constitutional Rights were Violated ...........................................................30

D.      Harmon's and the Dodsons' Claims are not Moot........................................30

CONCLUSION ...................................................................................31

CERTIFICATE OF COMPLIANCE......................................................33

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS ....
......................................................................................................34

CERTIFICATE OF SERVICE..............................................................35

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Bailey v. Kenney*, 791 F.Supp. 1511 (D. Kan. 1992) ....................................... 26-27

*Blum v. Yaretsky*, 457 U.S. 991 (1982) ...................................................28

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) .......................................17

*Cannon v. City and County of Denver*, 998 F.2d 867 (10th Cir. 1993) .....................
................................................................................... 19, 20, 21, 22

*Cantwell v. Connecticut*, 310 U.S. 296 (1940) ...............................19, 20

*Chafin v. Chafin*, 568 U.S. 165 (2013) ...................................................30

*Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942) ................................ 19, 20, 21

*Coleman v. Turpen*, 697 F.2d 1341 (10th Cir. 1982) .......................................23, 27

*Committee for First Amendment v. Campbell*, 962 F.2d 1517 (10th Cir. 1992) .....30

*Costello v. City of Burlington*, 632 F.3d 41 (2nd Cir. 2011) ........................... 15-16

*Dennis v. Sparks*, 449 U.S. 24 (1980) ..............................................25, 26

*El Fundi v. Deroche*, 625 F.2d 195 (8th Cir. 1980) ...............................24

*Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442 (10th Cir. 1995) ..........
...................................................................................25, 26, 27-28

*Howard v. City of Tulsa*, 712 P.2d 797 (Okla. Crim. App. 1986) ................... 22-23

*In re Johnson*, 940 F.2d 609 (10th Cir. 1991) .......................................23

*Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082 (10th Cir. 2006) .............19

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974).............................. 27-28

*Jones v. Wet Seal Retail, Inc.*, 519 F.Supp.2d 1164 (D. Kan. 2007) ............... 28-29

*Knox v. Service Employees*, 132 S. Ct. 2277 (2012) .............................................30

*Kolender v. Lawson*, 461 U.S. 566 (1974)...........................................................29

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)..............................................23

*Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984) ...............23-24, 25

*Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994).....................13, 14, 15

*Mora-Contreras v. Peters*, 2020 WL 2089479, slip op. (D. Or. 2020) .................31

*Nat'l Council for Improved Health v. Shalala*, 122 F.3d 878 (10th Cir. 1997) .........
.......................................................................................................................18, 19

*Oney v. Oklahoma City*, 120 F.2d 861 (10th Cir. 1941) ...........................20, 21, 22

*Powell v. (1) Robert Bradley Miller*, 104 F.Supp.3d 1298 (W.D. Okla. 2015) .........
.....................................................................................................................25, 26-27

*Secretary of State of Maryland v. J.H. Munson Co.*, 467 U.S. 947 (1984).............17

*Sturdivant v. Blue Valley Unified School District*, USD 229, Case No. 18-cv-2661-
JWL (D. Kan. May 30, 2019)..............................................................................27

*Tinker v. Des Moines Ind. Community Sch. Dist.*, 393 U.S. 503 (1969) ...............29

*United States v. Jackson*, 88 F.3d 845 (10th Cir. 1996).........................................15

*Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988) ......................17

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ..............................................7

## ORDINANCES

City of Norman, Oklahoma Code, Section 15-503 .............................. 12, 19, 20, 22

Section 15-503(1) ............................................................................. 17, 18, 19, 21

Section 15-503(2) .................................................................. 17, 18, 19, 21

Section 15-503(3) ................................................... 12, 13, 15, 17, 21, 22

Section 15-503(4) ....................................................... 17, 18, 19, 21, 22

Section 15-503(5) ........................................................17, 18, 19, 21-22

## RULES

Fed. R. App. P. 10(a) ........................................................................15

Fed. R. App. P. 32(a)(5)....................................................................33

Fed. R. App. P. 32(a)(6).....................................................................33

Fed. R. App. P. 32(a)(7)(B).................................................................33

Fed. R. App. P. 32(f)..........................................................................33

## CONSTITUTION

First Amendment ........................................................................11, 17

## I.  THE CITY AND ROBERTSON ARE NOT ENTITLED TO SUMMARY JUDGMENT ON HARMON'S AND THE DODSONS' AS-APPLIED FREE SPEECH CLAIMS

### A.  It is not Undisputed that Law Enforcement Focused Only on Loud Noises

The City and Robertson cite six facts in an attempt to establish that it is undisputed that law enforcement focused only on loud noises. (Answer Brief at 8-9). However, none of the citations establish that law enforcement addressed only noise, and that content played no role in the enforcement of the Code. "Government regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (cleaned up).

The first citation states only that Shane Dodson was told to stop using a plastic cone to focus his voice. It is not established that this directive was because his speech was too loud or because it was audible inside the clinic and people were offended by the message. Similarly, the fourth and fifth citations involve only the use of a cone, with no explanation as to why they were being told to stop speaking. The third citation states that Harmon was using a "PA system" and "disrupting the business." Again, this could well have been, at least partially if not entirely, because of offense taken at Harmon's message. In the second citation, Tammi Dodson states that the group was told to turn down the volume, but again, there is no indication that this was related to nothing more than the noise, and that content played no role.

The sixth citation explicitly mentions content: Harmon yelled at two people "about an abortion." The City and Robertson argue that the reference to the content should be ignored because Harmon was yelling. That reasoning is nonsensical. He was yelling about an abortion, and there is no indication that the complainant had a problem with the volume and not the content. Given that the woman's complaint explicitly specified the content of Harmon's message, it cannot be undisputed that content played no role.

Harmon and the Dodsons are not simply grasping at straws, arguing that it is not out of the realm of possibilities, however unlikely, that content played a role in the enforcement. In fact, Harmon and the Dodsons set forth substantial evidence, enumerated in their Initial Brief, of specific references by both law enforcement officers and the complaining individuals to the specific content of the speech about which they were complaining. It cannot be ruled out, and certainly cannot be undisputed, that this content influenced the decision to enforce the Code. If people inside the clinic were offended by Harmon's and the Dodsons' message, law enforcement could very well have addressed those complaints by telling them to turn down their volume so their offensive message could no longer be heard. This is especially so given the plethora of record references to content rather than noise. Notably, as the movants, it is the City's and Robertson's burden to show that a fact is undisputed, not Harmon's or the Dodsons'.

It must be noted that, at the time of the prior related appeal before this Court, this case was at the preliminary injunction stage, and no depositions had yet been taken. Since then, the deposition testimony, cited by Harmon and the Dodsons on summary judgment below and in their Initial Brief, is replete with references to the content of their speech and the negative response to that message. It simply was not appropriate for the District Court to find that it was undisputed that the Code was enforced based on the noise only, and that the content of the message played no role.

The City and Robertson argue that, because Harmon and the Dodsons could not recall exact dates, their testimony must be rejected, and the evidence considered undisputed. (Answer Brief at 9-10, 11-12). This assertion ignores the obvious fact that, as the movants, the City and Robertson, not Harmon and the Dodsons, have the burden to show that there is no genuine issue of material fact.

The record reflects the following: in 2016, Harmon was cited under the Code. (App. Vol. 1 at 21). On a separate occasion, in October 2016, Robertson threatened to cite Harmon under the Code. (App. Vol. 1 at 22). In August 2017, the City's officers cited another individual under the Code, explaining that a person inside the building could hear the individual outside. (App. Vol. 1 at 22). From 2016 through 2018, the City's officers cited and/or threatened to cite other individuals, and for many years have threatened Harmon, the Dodsons, and their associates, under the Code by stating that if a person inside a building can hear them they are in violation

of the Code. (App. Vol. 1 at 22).

In 2016, Harmon's and the Dodsons' counsel sent a letter to the City's legal department to avoid litigation and reach an amicable resolution of the issues. (App. Vol. 1 at 22). That same year, the City's assistant district attorney reached an agreement with Harmon that would allow him to use a plastic hand-held cone while exercising his free speech rights without threats of citation under the Code. (App. Vol. 1 at 22). In April 2018, an officer of the City threatened Harmon, the Dodsons, and their associates with enforcement under the Code by stating that if a person inside a building can hear them they are in violation of the Code. (App. Vol. 1 at 23).

The Dodsons do not have to show that it is undisputed that they were threatened with citation during the relevant period; the City and Robertson have to show that it is undisputed that they were not. The above record evidence is sufficient to create a genuine issue of material fact that the City's officers enforced or threatened to enforce the Code against the Dodsons. Their inability to recall the exact dates of their encounters does not create an undisputed issue that the Code was never enforced against them or was not enforced during the relevant time period.

The City and Robertson argue that it is undisputed that law enforcement only considered noise in enforcing the Code against Harmon and the Dodsons because Robertson and the clinic patrons have a right to express their opinions. (Answer Brief

at 12-14). However, the City's and Robertson's legal conclusion does not follow from the facts. Certainly, Robertson and clinic patients and staff have a First Amendment right to express their opinions; Harmon and the Dodsons have no problem with that. The issue is the City and Robertson have turned this reasoning on its head. They argue: "[Harmon and the Dodsons] should not be allowed to silence Defendant Robertson, the employees and patrons of the Abortion Surgery Center, or anyone else who disagrees with [them]" by arguing that the expression of their opinion renders the enforcement content based. (Answer Brief at 13). As the claims in this case demonstrate, no one is trying to silence Robertson and the employees and patrons of the clinic; it is Harmon and the Dodsons who are being silenced.

The obvious issue in this case is not Robertson's expression or that of clinic patrons; it is Harmon's and the Dodsons' expression. The City cannot silence Harmon and the Dodsons because of disagreement with their expression. The City and Robertson cite Justice Brandeis's famous quote that the remedy to falsehood is more speech, not forced silence. (*Id.*). That is exactly the point – clinic patrons and personnel and law enforcement are free to express their views, and Harmon and the Dodsons are free to express theirs. The purpose of highlighting the voluminous expression of disagreement with Harmon's and the Dodsons' message is not an attempt to silence that expression; Harmon and the Dodsons have no problem with contrary views. The purpose is to demonstrate that such disagreement is the basis

for restricting Harmon's and the Dodsons' contrary message, or, at least, there is a genuine issue of fact as to that point.

**B.    As Applied, § 15-503(3) Does not Serve a Significant Government Interest**

Even if § 15-503(3), as applied, is content neutral (which Harmon and the Dodsons do not concede), it does not serve a significant government interest. The City and Robertson claim that they "do not argue that they have an interest in protecting citizens from all noise that is audible inside a building." (Answer Brief at 15). This bald assertion is contrary to the record evidence, which shows that, on many occasions, the City's officers cited and/or threatened to cite individuals, including Harmon and the Dodsons, under the Code by stating that if a person inside a building can hear them they are in violation of the Code. (App. Vol. 1 at 22, 23). On November 29, 2016, City Attorney Knighton himself assured Harmon's counsel that the City Attorney's office does not believe that preaching into a medical facility or loud enough **to be heard inside** a medical facility is an objectively reasonable volume, and thus § 15-503 applies to Harmon's conduct. (App. Vol. 2 at 188). Robertson went so far as to say that if someone "across the street in another building," meaning not the abortion clinic, heard Harmon's or the Dodsons' speech, they still could be in violation of the Code. (App. Vol. 2 at 235, 242). This evidence is at least sufficient to create a genuine issue of material fact on this point.

The City and Robertson argue that Harmon's and the Dodsons' "belief that

the City's interest in protecting its citizens from unwelcome noise is limited to patients at a medical facility is untenable." (Answer Brief at 15). This statement is in direct conflict with their arguments below, where they relied heavily on *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994).[1] They argued to the District Court: "Section 15-503(3) is narrowly tailored to further the City's interest in maintaining peace and privacy **near a medical facility**." (App. Vol. 1 at 122) (emphasis added). They concluded:

> While noisy demonstrations may be constitutionally protected at other places or other times, they may be prohibited next to medical facilities where patients and relatives alike often are under emotional strain and worry. Fairly restated, the City has not banned Plaintiffs from exercising their constitutional rights in public spaces in the City. Rather, the City has simply asked Plaintiffs to turn down the volume of their protests **near a medical facility** when it gets too loud.

(*Id.*) (emphasis added).

## C.    As Applied, § 15-503(3) is not Narrowly Tailored

In arguing that § 15-503(3) is narrowly tailored, the City and Robertson state: "The district court correctly observed that it is undisputed that Plaintiffs were free to continue their demonstrations and preaching outside so long as they did not get so loud as to be **audible inside the facility**." (Answer Brief at 16) (emphasis added). This again underscores that § 15-503(3) is applied to any sound that is audible.

---

[1] Indeed, the City and Robertson rely on *Madsen* in this appeal. (Answer Brief at 18-20). It cannot be disputed that the holding in *Madsen* applies only at medical facilities.

However many times the City and Robertson deny that the Code is applied to any sound that is audible, they continue to come back to that very point in their own arguments. Applying the Code to any sound that is "audible inside the facility," to use the District Court's language which is now approved by the City and Robertson on appeal, is anything but narrowly tailored. There simply is no requirement that the sound be loud, disruptive, or disturb anyone's peace. It is enough that it is audible.

The City and Robertson argue that *Madsen* applies, despite its far narrower application. (Answer Brief at 18-20). First, they do not respond to the point that the injunction in *Madsen* was intended to protect *patients*. The testimony in that case as to the impact on patients was critical to the Court's holding. 512 U.S. at 758. In the instant case, there is no evidence that Harmon's or the Dodsons' speech negatively impacted a patient during a surgery, recovery time, or any other time. Second, the City argues that "[e]ach of the known dates when Plaintiffs were cited" was a date set aside for surgery or recuperation. (Answer Brief at 20). There are several problems with this assertion. First, they do not address the allegations of encounters on unknown days of the week. Again, they, the movants, bear the burden to show that the facts are undisputed.

Second, the City and Robertson rely upon a document from the clinic's website stating what days of the week procedures occur on. (*Id.* at 19). The citation is to a supplemental appendix in the prior appeal. There is no citation to the record

in this appeal, and it does not appear that the document was ever filed in the District Court. Evidence not presented to the district court is not part of the record on appeal, and will not be considered by this Court. *United States v. Jackson*, 88 F.3d 845, 848 n.2 (10th Cir. 1996) (citing Fed. R. App. P. 10(a)). Even if the document is considered, it only provides the days of the week on which procedures are performed; it says nothing of the times, which was part of the injunction in *Madsen*. Again, the City and Robertson bear the burden of showing that there is no disputed issue of fact, and they have failed to do so.

The City and Robertson argue that the disturbing the peace component of the Code has not been excised because no sound can disturb the peace unless it first can be heard. (Answer Brief at 20). That is not the point; the point is simply being heard, alone, is not enough to disturb the peace. Yet, as applied, all that is required to violate § 15-503(3) is to be heard inside a building.

## D.    As Applied, § 15-503(3) Does not Leave Open Ample Alternative Channels of Communication

The City's and Robertson's argument that Harmon and the Dodsons have ample alternative channels of communication is that they could keep preaching if they lowered their voices, relying upon *Costello v. City of Burlington*, 632 F.3d 41, 46 (2nd Cir. 2011). (Answer Brief at 21-22). However, in *Costello*, there was evidence of excessive noise: "Costello's raised voice was heard more than 350 feet away, dominated the area, and was not subsumed in any competing ambient noise."

15

632 F.3d at 46. Here, the only standard is that Harmon's and the Dodsons' speech *can be heard* inside the clinic. The simple fact that speech can be heard cannot be grounds to regulate it. The City and Robertson argue that Harmon and the Dodsons may continue their speech "if the noise they create does not impinge on others with an equal claim . . . ." (Answer Brief at 22). However, as applied, impinging on others means merely being heard by others. That standard simply does not satisfy constitutional scrutiny.

## II.     THE CITY AND ROBERTSON ARE NOT ENTITLED TO SUMMARY JUDGMENT ON HARMON'S AND THE DODSONS' AS-APPLIED FREE EXERCISE CLAIMS

As argued in Harmon's and the Dodsons' Initial Brief, the District Court's grant of summary judgment on the as-applied free exercise claim hinges on its finding that the enforcement of the Code was not content-based. (Initial Brief at 33-34). For the reasons already set forth in the Initial Brief and herein, the enforcement was content-based. The City and Robertson do not argue that the application of the Code satisfies strict scrutiny, and the District Court did not address that issue.

## III.     THE CITY AND ROBERTSON ARE NOT ENTITLED TO SUMMARY JUDGMENT ON HARMON'S AND THE DODSONS' FAILURE TO TRAIN CLAIM

As set forth in Harmon's and the Dodsons' Initial Brief, they have stated a claim for failure to train. First, as set forth in the Initial Brief, they set forth allegations that clearly establish a pattern of the City's officers threatening people

with citation under the Code if they can be heard inside a building. (Initial Brief at 37). The City and Robertson argue that the only training that could have prohibited the violations "is training that prohibits § 15-503(3) from being enforced against" Harmon and the Dodsons. (Answer Brief at 28). This is false. The City should have trained its officers not to apply § 15-503(3) to any sound that is audible inside a building. As has been set forth, that is the standard that has been applied many times.

Further, Harmon and the Dodsons have set forth substantial deposition testimony of officers who received no training on the ordinance or the First Amendment, and who demonstrated an inability to interpret or apply the ordinance or the First Amendment. (Initial Brief at 37-40). The City and Robertson do not respond to any of this voluminous evidence.

## IV.  HARMON AND THE DODSONS HAVE STANDING TO CHALLENGE THE CODE ON ITS FACE

The City and Robertson argue that Harmon and the Dodsons lack standing to challenge §§ 15-503(1), (2), (4), and (5). (Answer Brief at 31-35). They argue that Harmon and the Dodsons have never been cited for violation of those provisions. (*Id.* at 32, 34-35). However, as the City and Robertson concede, in the First Amendment context, litigants may facially challenge a statutory provision that has not yet been applied against them. *See Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 392-93 (1988); *Secretary of State of Maryland v. J.H. Munson Co.*, 467 U.S. 947, 956-957 (1984); *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

17

The City's and Robertson's only response to that argument is to cite *Nat'l Council for Improved Health v. Shalala*, 122 F.3d 878, 883 (10th Cir. 1997) for the basic proposition that a plaintiff still must demonstrate its own cognizable injury in fact. (Answer Brief at 31). Having cited that case, they then go on to argue that, contrary to the Supreme Court case law cited above, Harmon and the Dodsons lack standing because they have never been cited for violating §§ 15-503(1), (2), (4), or (5). (*Id.* at 32, 34-35). They then contend that Harmon and Tammi Dodson have expressed no desire to engage in conduct violative of those provisions, ignoring contrary record evidence. (*Id.* at 32-33, 35). Finally they claim that Harmon and the Dodsons have not been prevented from engaging in protected activity because of the threat of enforcement of the ordinance. (*Id.* at 33-35).

In *Shalala*, this Court's holding was not that the plaintiffs lacked standing because the relevant regulations had never been applied to them. The Court's ruling was based on the fact that the plaintiffs did "not advance a single claim they wish to make, or receive, which could be prohibited under the health claims regulations. Instead, plaintiffs make generalized assertions that they will be 'adversely affected' by the health claims regulations." *Shalala*, 122 F.3d at 884. This is decidedly different from the instant case. In their Initial Brief, Harmon and the Dodsons set forth, in detail and supported by record evidence, that they have concrete plans to engage in speech that could readily be proscribed by sections (1), (2), (4), and (5) of

the ordinance. (Initial Brief at 41-46). The City and Robertson address none of this argument.

Further, Harmon and the Dodsons demonstrate, in detail, that they have satisfied the standard set forth by this Court in *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006), decided nine years after *Shalala*. (*Id.* at 44-46). The City and Robertson do not address *Walker*.

The City and Robertson argue that §§ (1), (2), (4), and (5) "prohibit well-defined and narrowly limited classes of speech and conduct, the prevention and punishment of which have never been thought to raise any Constitutional problems." (Answer Brief at 36). They contend that this Court's definition of "fighting words" as "epithets," in *Cannon v. City and County of Denver*, 998 F.2d 867, 873 (10th Cir. 1993), should be rejected, citing no authority or supporting argument. (Answer Brief at 37). They argue that, even accepting this Court's limitation of the definition of "fighting words," it did not limit the other categories of speech covered in *Cantwell v. Connecticut*, 310 U.S. 296 (1940) and *Chaplinsky v. State of New Hampshire*, 315 U.S. 568 (1942). (Answer Brief at 37). What the City and Robertson neglect to address is the requirement that, to satisfy constitutional scrutiny, disturbing the peace ordinances must be given a limiting construction by state courts. (*See* Initial Brief at 55-64). They apparently concede that Oklahoma courts have not limited the construction of § 15-503.

The City and Robertson rely on *Oney v. Oklahoma City*, 120 F.2d 861, 865 (10th Cir. 1941) in concluding that the ordinance here is constitutional. (Answer Brief at 37-38). They argue that *Cantwell* and *Chaplinsky* address more than fighting words, so the argument that *Oney* must be limited to fighting words to be constitutional is erroneous. (*Id.* at 38). The City and Robertson miss the point. The case law set forth in the Initial Brief demonstrates that, in order for disturbing the peace ordinances that cover speech to be constitutional, they must be limited to fighting words. The point of this case law, including this Court's decision in *Cannon*, is not that *Chaplinsky* is directly on point and courts must follow the holding in *Chaplinsky*. The point is that, in order for disturbing the peace ordinances to satisfy constitutional scrutiny, as applied to speech, they must be limited to fighting words, *as defined by Chaplinsky* and its progeny. Further, to the extent *Cantwell* and *Chaplinsky* cover more than fighting words, there still is no Oklahoma state case limiting the construction of § 15-503 to be consistent with those cases. This Court may not simply read that limiting construction into the ordinance. As set forth in the Initial Brief, the courts of the state must affirmatively limit the ordinance. Here, there is no limiting construction whatsoever.

The City's and Robertson's reliance on *Oney* is misplaced. First, notably, *Oney* predates the Supreme Court's analysis in *Chaplinsky*, and it obviously predates this Court's standards in *Cannon*. Based on the subsequent case law, language like

that permitted in *Oney* passes constitutional muster only if it is limited to fighting words as defined by this Court in *Cannon*. At the time *Oney* was decided, this Court did not even have *Chaplinsky*, and thus did not consider the limiting construction for the applicable standard required today. Given the current applicable standard to facial challenges employed by the Supreme Court and this Court, which did not exist at the time *Oney* was decided, *Oney* is outdated.

Further, the language of the ordinance in *Oney* is different from the Code here in salient aspects. The ordinance in *Oney* did not include the language of § 15-503(3), regarding "loud or unusual sounds." Clearly, *Oney* cannot be dispositive of the facial challenge to § 15-503(3). With respect to §§ 15-503(1), (2), (4), and (5), the language in the ordinance in *Oney* was far more specific than the vague, undefinable language in the Code. The ordinance in *Oney* applied to "profane, violent, abusive or insulting language." *Id.* at 866 n.5. The Code, section (2), applies to language that is "unseemly, obscene, offensive . . . ." Such language is far vaguer and open to interpretation, which opens the door to unbridled discretion. The section of the ordinance in *Oney* that applied to "any sign, emblem, flag or device" proscribed any such item that was "insulting, profane, or abusive . . . ." *Oney*, 120 F.2d at 866 n.5. The parallel provision in the Code omits all such specific language, and applies to any such item the natural consequence of which, inter alia, is an "other

21

breach of the peace." (Code at subsection (5)). Again, the Code includes none of the narrow specificity of the ordinance in *Oney*.

The ordinance in *Oney* prohibits language that casts "contumelious reproach or profane ridicule" on any religion. *Oney*, 120 F.2d at 866 n.5. The Code simply proscribes literature that "casts ridicule" on any religion. (Code at subsection (4)). Finally, the ordinance in *Oney* did not include the vague provisions found in the Code here that prohibit "improper conduct or carriage."

The City and Robertson argue that, because unprotected speech includes more than fighting words, the fact that Oklahoma courts have not limited the construction of the Code to fighting words is not dispositive. (Answer Brief at 40). First, the proposition that disturbing the peace ordinances that apply to speech must be limited to fighting words to be constitutional is established by case law, including *Cannon*. Further, the City and Robertson again fail to address the fact that there is *no* limiting construction of § 15-503 by any Oklahoma court, whether to fighting words or any other categories. As established by the Supreme Court and this Court, that is fatal to the ordinance.

In arguing that § 15-503(3) is not overbroad, the City and Robertson simply repeat the holding of the District Court in its reliance upon *Howard v. City of Tulsa*, 712 P.2d 797 (Okla. Crim. App. 1986). (Answer Brief at 41-42). They do not even attempt to respond to the arguments set forth in the Initial Brief demonstrating the

inapplicability of *Howard* to this case. (Initial Brief at 63). For the reasons set forth there, the District Court erred in relying upon *Howard*.

## V.    <u>ROBERTSON IS NOT ENTITLED TO QUALIFIED IMMUNITY</u>

### A.    Roberston was Acting Under Color of Law at the Abortion Clinic

The City and Robertson argue that Robertson was not acting under color of law when he served as a security guard at the clinic. (Answer Brief at 44-46). First, it should be noted that the District Court did not address this argument below. Accordingly, Harmon and the Dodsons argue that this Court should not address the argument on appeal. *In re Johnson*, 940 F.2d 609, 610 (10th Cir. 1991).

Should this Court address the argument, case law in this circuit is clear that, in certain circumstances, like those present in the instant case, a private individual may act under color of law. In *Coleman v. Turpen*, 697 F.2d 1341, 1345 (10th Cir. 1982), this Court cited the U.S. Supreme Court, holding that state action may be present when a party "has acted together with or has obtained significant aid from state officials . . . ." (Citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). In the instant case, Robertson "acted together with or has obtained significant aid from" City officials.

In *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1427-28 (10th Cir. 1984), an off-duty police officer working as a plain-clothes security guard at a store confronted an individual for suspected shoplifting. After some altercation, two on-

duty police officers arrived and took the suspect into custody. *Id.* at 1428. Like Robertson here, the off-duty officer argued that he was not acting under color of law at the time of his interaction with the suspect. *Id.* This Court disagreed, holding that the arresting officers made no independent investigation, but relied upon the off-duty officer's word. *Id.* at 1430. The police department routinely did not investigate allegations provided by a merchant before taking a suspect into custody. The police department provided merchants with special forms, allowing on-duty officers to issue a suspect a summons without taking them to jail. *Id.* This Court held that in so doing, the police followed a policy whereby they allowed the security guard to substitute his judgment for the on-duty officers. *Id.* The Court concluded that "[s]uch cooperative activity between the police department and a private party is sufficient to make [the security guard] a party acting under color of state law." *Id. See also El Fundi v. Deroche*, 625 F.2d 195, 196 (8th Cir. 1980) (holding "that state action is present when private security guards act in concert with police officers or pursuant to customary procedures agreed to by police departments . . .").

When Officer Carl Pendleton was working as an off-duty security guard at the abortion clinic on March 4, 2016, he filled out a citation against Harmon, and the on-duty police officer who assisted him relied upon Pendleton's information, and performed no independent investigation. (App. Vol. 2 at 275, 286, 287, 288, 289-90). Robertson himself argues in his Motion that he would follow the same

procedure as Pendleton. (App. Vol. 1 at 70). Unlike in *Lusby*, Robertson was not in plain clothes, but was in uniform. (App. Vol. 2 at 223-24). He had his badge, his sidearm, and identified himself as a Norman police officer. (App. Vol. 2 at 224, 243-44). As in *Lusby*, this "cooperative activity between the police department and a private party is sufficient to make [Robertson] a party acting under color of state law." 749 F.2d at 1430.

This Court held that, "[u]nder the joint action test, state action is present if a private party is a 'willful participant in joint activity with the State or its agents.'" *Powell v. (1) Robert Bradley Miller*, 104 F.Supp.3d 1298, 1310 (W.D. Okla. 2015) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). This Court held further that "'[t]he focus of this test is not on long-term interdependence between the state and a private entity' but on 'whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights.'" *Id.* (quoting *Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442, 1453 (10th Cir. 1995)). This Court cited *Gallagher* for the proposition that the "joint action test may be satisfied where there is a 'substantial degree of cooperative action between state and private officials . . . in carrying out the deprivation of the plaintiff's constitutional rights.'" *Id.* (internal quotations and citations in *Gallagher* omitted in *Powell*).

Here, Robertson acted "in concert" with City officials in depriving Harmon of his rights. On both occasions, Robertson sought the assistance of the City

Attorney's office. On October 28, 2016, Assistant City Attorney Knighton came to the scene and confirmed what Robertson had told Harmon. On May 12, 2017, Robertson spoke with Knighton on the telephone and relayed the information to Harmon. Robertson testified that this assistance always was available to him when he worked off-duty at the clinic, and that he "knew where his resources were," meaning the assistance of the City Attorney's office. (App. Vol. 1 at 241). Had a citation been issued, Robertson argued that he would have followed the same procedure as Pendleton on March 4, 2016, when the latter summoned an on-duty officer, who facilitated the signing of a citation by Pendleton based on nothing more than Pendleton's word as to what happened, engaging in no independent investigation. In this way, Robertson was "a 'willful participant in joint activity with the State or its agents,'" *Powell*, 104 F.Supp.3d at 1310 (quoting *Dennis*, 449 U.S. at 27), and he and City officials "acted in concert in effecting a particular deprivation of constitutional rights.'" *Id.* (quoting *Gallagher*, 49 F.3d at 1453).

This Court noted that, when a private party merely reports criminal activity to government officials who then take whatever action they deem appropriate, there is no state action by the private individual. *Id.* at 1311. However, "if 'there are allegations that the police officers actually acted under the direction' of a private party, or the evidence establishes the "private party 'acted in a concerted manner' with police," there are sufficient facts to find that the private party acted under color

of law. *Id.* (quoting *Bailey v. Kenney*, 791 F.Supp. 1511, 1522-23 (D. Kan. 1992)). Similarly, in *Coleman*, this Court held that allegations of state action were sufficient to overcome a motion to dismiss where a wrecking company "jointly participated in seizing the truck by towing it away." 697 F.2d at 1345. Here, Robertson acted in a concerted manner with the City by contacting the City Attorney's office and threatening citation based upon Knighton's assertions. Further, had a citation been given, Robertson would have followed the same procedure as Pendleton, in which the on-duty officer "acted under the direction" of the off-duty officer.

In *Sturdivant v. Blue Valley Unified School District*, USD 229, Case No. 18-cv-2661-JWL at *12-13 (D. Kan. May 30, 2019), the Court held that it was plausible that a recently-fired high school dance team coach "was still serving as the 'voice' of the team and was acting jointly with state actors as required to show that [she] was acting under color of state law when she allegedly excluded plaintiff from the team dinners." Similarly, here, while Robertson was off-duty on October 28, 2016, and on May 12, 2017, it is at least plausible, for summary judgment purposes, that he was "acting jointly with state actors," including Assistant City Attorney Knighton, and was thus acting under color of law when he restricted Harmon's constitutionally-protected activities.

"Under the nexus test, a plaintiff must demonstrate that 'there is a sufficiently close nexus' between the government and the challenged conduct such that the

27

conduct 'may be fairly treated as that of the State itself.'" *Gallagher*, 49 F.3d at 1448 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)). Under this test, a private party may be considered a state actor when the state "'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). As set forth above, the City provided at least "significant encouragement" to Robertson in instructing Harmon that he would be cited, on both October 28, 2016, and May 12, 2017: on both occasions, Assistant City Attorney Knighton provided overt direction to Robertson, and in the 2016 incident, came to the scene to reinforce Robertson's directive.

Robertson relies on *Jones v. Wet Seal Retail, Inc.*, 519 F.Supp.2d 1164 (D. Kan. 2007). However, in that case, the court found that private security guards calling the police in light of a suspected shoplifting incident is not state action. *Id.* at 1170. Here, Robertson did not call the police; he identified himself as the police and threatened citation if Harmon did not comply with his directive. In *Jones*, on-duty police arrived and refused the security guards' request to arrest the suspect. *Id.* The court found that the officer's actions revealed no "compliance with any requests by the Defendants, let alone joint action." *Id.* at 1170-71. Indeed, the officer denied the requests. Here, Assistant City Attorney Knighton assisted Robertson and affirmed his directive to Harmon. And again, Robertson argues that, had he issued a citation,

he would have followed the procedure followed by Pendleton. Pursuant to that procedure, not only does the on-duty officer not deny the off-duty officer's request; they comply with their request with no independent investigation of their own, simply taking the off-duty officer's word as to what occurred. *Jones* is not on point.

### B.    The District Court Erred in Finding no Constitutional Violation

Harmon and the Dodsons rely on their arguments in the Initial Brief and above that their constitutional rights were violated. They wish here to address the point that the City and Robertson apparently misunderstand the reference to the "undifferentiated fear or apprehension of disturbance" standard from *Tinker v. Des Moines Ind. Community Sch. Dist.*, 393 U.S. 503, 508-509 (1969). The point is that undifferentiated fear is not sufficient grounds to restrict protected speech. Here, the ordinance does not *even* require undifferentiated fear; it requires merely that sound be audible. It goes even further than the ordinance in *Tinker*, which itself went too far.

The City and Robertson argue that it is common sense that law enforcement officers must exercise some discretion in enforcing ordinances. (Answer Brief at 50-51). Harmon's and the Dodsons' point, and that of the Supreme Court in *Kolender v. Lawson*, 461 U.S. 352, 358 (1983), is that their discretion cannot be unguided, as it was here.

**C.    The Law is Clearly Established that Harmon's and the Dodsons' Constitutional Rights were Violated**

As set forth fully in the Initial Brief, the District Court erred in finding that the law is not clearly established that Harmon's and the Dodsons' constitutional rights were violated.

**D.    Harmon's and the Dodsons' Claims are not Moot**

Robertson argues, briefly, that the declaratory and injunctive claims against him are moot because he has retired from the police force. (Answer Brief at 51-52). First, again, the District Court did not address this argument, and this Court should not address it on appeal. However, the argument fails on the merits.

"A claim is moot when no reasonable expectation exists that the alleged violation will recur and interim relief of events have eliminated the effects of the alleged violation." *Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1524 (10th Cir. 1992). "But a case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Service Employees*, 132 S. Ct. 2277, 2287 (2012)). Here, there is a reasonable expectation that the violation will recur, the interim relief of events have not eliminated the effects of the alleged violation, and it is not impossible for this Court to grant effectual relief to Harmon and the Dodsons.

Robertson cites a case involving claims against a public official who was no longer so employed. (Answer Brief at 51-52) (citing *Mora-Contreras v. Peters*, 2020 WL 2089479, slip op. at \*6 (D. Or. 2020)). However, as Robertson himself argued below, when he engaged in the challenged conduct, he was not acting in his official capacity as a police officer, but rather as a security guard, working off-duty for the abortion clinic. (App. Vol. 1 at 69). Robertson's retirement from the police force has no effect on his future employment as a security guard at the Abortion Surgery Center, particularly given his extensive experience in that role. Robertson testified that one does not have to be a police officer to work security at the abortion clinic. (App. Vol. 2 at 225). While Robertson argues that, because of his retirement, he will no longer be able to affect Harmon's and the Dodsons' constitutional rights under color of law, Robertson acted under color of law in violating Harmon's constitutional rights on October 28, 2016, and on May 12, 2017, notwithstanding his off-duty status. Thus, Robertson remains in a good position to work as a security guard at the abortion clinic, and if he does, it is likely he will again violate Harmon's and the Dodsons' constitutional rights. Accordingly, the claims for declaratory and injunctive relief are not moot.

## CONCLUSION

For the reasons set forth in the Initial Brief and above, the District Court erred in granting summary judgment to the City and Robertson on Harmon's and the

Dodsons' as-applied claims, and in granting judgment on Harmon's and the Dodsons' facial claims.

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

- this document contains 6,496 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

- this document has been prepared in a proportionally spaced typeface using Word 2016 in 14-point Times New Roman font.

<u>s/David J. Markese</u>
David J. Markese, Esq.
Florida Bar No. 0105041
**AMERICAN LIBERTIES INSTITUTE**
P.O. Box 547503
Orlando, FL 32854-503
Telephone: (407) 786-7007
Facsimile: (877) 786-3573
Email: dmarkese@ali-usa.org
Counsel for Appellants

## <u>CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS</u>

I hereby certify that a copy of the foregoing Appellants' Reply Brief, as submitted in Digital Form via the court's ECF system, is an exact copy of the document filed with the Clerk and has been scanned for viruses with the AVG AntiVirus Free, software version 22.3.3228 (build 22.3.7108.721), virus definitions version 220516-4, UI version 1.0.657. In addition, I certify all required privacy redactions have been made.

<div align="center" style="margin-left:40%">

<u>s/David J. Markese</u>
David J. Markese, Esq.
Florida Bar No. 0105041
**AMERICAN LIBERTIES INSTITUTE**
P.O. Box 547503
Orlando, FL 32854-503
Telephone: (407) 786-7007
Facsimile: (877) 786-3573
Email: dmarkese@ali-usa.org
Counsel for Appellants

</div>

## **<u>CERTIFICATE OF SERVICE</u>**

This is to certify that on July 12, 2022, a copy of the foregoing has been served

via the Court's CM/ECF system to:

Rickey J. Knighton II
Assistant City Attorney
Kristina L. Bell
Assistant City Attorney
P.O. Box 370
201 West Gray
Norman, Oklahoma 73070
Telephone: (405) 217-7700
Facsimile: (405) 366-5425
Email: rick.knighton@normanok.gov
Email: kristina.bell@normanok.gov

<div style="margin-left:40%;">

<u>s/David J. Markese</u>
David J. Markese, Esq.
Florida Bar No. 0105041
**AMERICAN LIBERTIES INSTITUTE**
P.O. Box 547503
Orlando, FL 32854-503
Telephone: (407) 786-7007
Facsimile: (877) 786-3573
Email: dmarkese@ali-usa.org
Counsel for Appellants

</div>